**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CONSOLIDATED
CIVIL ACTION NO. 09-109 (WOB)

COMMONWEALTH ORTHOPAEDIC CENTERS,
P.S.C.                                                          PLAINTIFF

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

PHILADELPHIA INDEMNITY INSURANCE
COMPANY                                                         DEFENDANT


This is a diversity action for breach of contract, bad faith, and statutory violations arising out of defendant's refusal to defend and indemnify plaintiff for liability flowing from employment discrimination claims brought by plaintiff's former employees.

This matter is presently before the court on defendant's renewed motion to disqualify plaintiff's counsel (Doc. 44). The court has reviewed this matter and concludes that oral argument is unnecessary to the resolution of this motion.

*Factual and Procedural Background*

A.  <u>Underlying Sexual Harassment Lawsuits</u>

Plaintiff Commonwealth Orthopaedic Centers, PSC ("COC") operates orthopaedic medical practices in Northern Kentucky.

On March 31, 2004, COC employees Kim Lewis, Nicole Hofstedder and Nina Gross, along with five other employees, made a written complaint to COC Chief Financial Officer and Interim

Administrator, Lydia Reynolds, regarding sexual harassment by a COC supervisor, Deron Jump. (Exh. A)[1] The letter stated that it was following up on meetings held the previous September and December between these employees and management about Jump, and that the situation had not improved.

Upon receipt of this letter, COC asked its attorneys, Beverly Storm and Mark Arnzen, to conduct an investigation into the employees' complaints. On April 13, 2004, Arnzen and Storm prepared a memorandum to the physicians at COC summarizing their investigation into Jump's behavior and the law of sexual harassment. (Exh. B) The memorandum stated that Storm and Arnzen were scheduled to meet with the physicians that same day regarding the matter.

In July 2008, Lewis, Gross and Hofstedder were called as witnesses in a trial in Kenton Circuit Court in a lawsuit filed against COC by two former employees, Robin Denier and Jennifer Compian, also arising out of sexual harassment by Jump. Storm and Arnzen represented COC in that case, which resulted in a jury verdict against COC of over a million dollars plus attorneys' fees of approximately a quarter of a million dollars. (Exh. F)

On November 21, 2008, Lewis, Hofstedder and Gross filed their own suit against COC in Kenton Circuit Court for sexual

---

[1] All exhibits are attached to the Renewed Motion to Disqualify, unless otherwise noted.

harassment arising out of Deron Jump's conduct. (Exh. C) The complaint alleged that, after plaintiffs complained to COC management about Jump's behavior, they were retaliated against and constructively discharged.

In July 2009, Lewis, Hofstedder, and Gross reached settlements with COC, entering into consent judgments awarding them each $250,000 and substantial attorneys' fees. As part of these settlements, claims against PIIC were also assigned to the plaintiffs. Storm and Arnzen handled these settlement negotiations on behalf of COC.

    B.    **<u>Insurance Coverage Background</u>**

COC was issued an Employment Practices Liability ("EPL") Policy by Scottsdale Insurance effective in January 2003. The policy was not renewed, however, due to claims involving Jump.

In February 2008, COC applied for an EPL policy with defendant Philadelphia Indemnity Ins. Co. ("PIIC"). The application, which was signed by COC CEO Anthony Arnzen, stated that the Scottsdale policy had not been renewed "due to a loss." (Exh. H) COC also submitted supplemental claim forms identifying the Denier and Compian claims. (Exh. I) These forms were prepared by Storm. (Storm Depo. 11-12) Based on this information, PIIC issued a claims-made EPL policy effective March 2, 2008 through March 2, 2009.

On August 11, 2008, Mark Arnzen received a letter from

counsel for plaintiffs Gross-Barhorst, Hofstedder, and Lewis, indicating that they intended to pursue a claim for sexual harassment against COC. (Doc. 44-7) On September 2, 2008, a General Liability Notice of Occurrence/Claim Form was submitted to PIIC identifying sexual harassment claims asserted by Lewis, Hofstedder, and Gross. (Exh. J) This form listed Mark Arnzen as the contact person and attached correspondence from the attorney representing the three women. Discussions then ensued between PIIC claims representatives and Storm regarding coverage for the claims of the three former employees.

On September 30, 2008, PIIC sent a letter to Mark Arnzen stating, in part:

> We believe that the initial report of claim to Commonwealth took place in 2004, when the original allegation of sexual harassment was both made by the group of employees and investigated by counsel hired by Commonwealth. **As a result, it is the considered decision of Philadelphia Indemnity Insurance Company that there is NO coverage available to Commonwealth for this matter**.

(Exh. K) (emphasis added)

Following further communications between the Arnzen office and PIIC, a second denial letter was sent on January 19, 2009 to Mark Arnzen. No further information was submitted to PIIC on COC's behalf regarding the claimed coverage.

### C. The Instant Litigation

COC filed this action against PIIC on July 14, 2009, alleging claims for breach of contract, bad faith, unfair claims

4

settlement practices (KRS 304.12-230), and negligence arising out of PIIC's refusal to defend and indemnify under the EPL policy. (Doc. 1)

On July 29, 2009, Lewis, Hofstedder, and Gross also filed suit in this court against PIIC alleging breach of contract based on PIIC's failure to defend and indemnify COC on the claims the three women brought in the state court action. Thereafter, defendant moved to consolidate these two cases.

PIIC filed counterclaims for declaratory relief, seeking rescission and a declaration that the EPL policy is void *ab initio* because COC failed to disclose that they were on notice in 2004 of potential claims by Lewis, Hofstedder, and Gross.

This court held a preliminary pretrial conference on November 4, 2009, after which it consolidated the two cases. The court also bifurcated and stayed discovery on the bad faith claims.

Defendant then filed a motion to disqualify plaintiff's counsel, on which the court heard oral argument on March 24, 2010. The court concluded that the motion was premature given that no discovery had been taken and that the issues of coverage ultimately might be resolved via summary judgment, thereby mooting the issue of whether counsel could serve at trial. (Doc. 30) The court thus set a discovery schedule, including allowing defendant to take Storm's deposition, and summary judgment

deadlines.

On July 14, 2010, defendant filed a renewed motion to disqualify plaintiff's counsel, which is now ripe for resolution.

### *Analysis*

Rule 3.7 of the Kentucky Rules of Professional Conduct (Supreme Court Rule 3.130) provides that a lawyer "shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." The Rule lists several exceptions, one of which applies where "[d]isqualification of the lawyer would work a substantial hardship on the client." *Id.*

In *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555 (Ky. 2001), the Supreme Court of Kentucky discussed Rule 3.7, noting that its application requires the balancing of the client's right to choice of counsel against the unfair prejudice created when an attorney testifies. *Id.* at 558. The court noted that a primary concern of this rule is "the likelihood that the jury will confuse the attorney as a witness with the attorney as an advocate." *Id.*

The court further stated that this balancing is required "lest the rule be used as a tactical weapon for expense, delay, inconvenience, and sequestration of a witness." *Id.* at 560.

Moreover, "disqualification is a drastic measure which the courts should be hesitant to impose except when absolutely necessary." *Id.*

The *Zurich* court thus held that a party seeking to disqualify opposing counsel must show that: (1) counsel's testimony is important to its proof at trial; (2) it is probable that counsel's testimony will conflict with that of other witnesses; and (3) the information obtained from counsel is unattainable from other sources. *Id.* The court further stressed that "the showing of prejudice needed to disqualify opposing counsel must be more stringent than when the attorney is testifying on behalf of his own client, because adverse parties may attempt to call opposing lawyers as witnesses simply to disqualify them." *Id.* The court concluded that this test had not been met, even though the plaintiff's attorney had submitted his own affidavit in opposition to summary judgment on his client's bad faith claims. *Id.*

Application of these principles to the facts of this case indicates that disqualification of plaintiff's counsel is still not warranted. The first aspect of this analysis involves defendant's contention that the policy is void *ab initio* because COC failed to disclose the complaints made by the state court plaintiffs in 2004, prior to COC's policy application.

However, the information that defendant seeks to obtain from Storm and Arnzen on this issue – *viz*, the fact that COC received complaints from Lewis, Hofstedder, and Gross as early as 2003 and had an internal investigation conducted following receipt of

7

their written complaint in 2004 – is clearly available from other witnesses as well as from documents. Defendant may question COC management about their receipt of the employees' complaints and the fact that they were aware of those complaints at the time COC applied for the EPL policy in question. COC management may also be questioned about the fact that they had their attorneys conduct an investigation into these complaints.

While defendant now argues that Storm's deposition has revealed that she is the only person who can testify to what the female COC employees told her during the investigation in 2004, that argument is not well taken. These women themselves may be called as witnesses; indeed, they have submitted affidavits in support of COC's position on the issue of coverage, which is concurrently being briefed on cross motions for summary judgment. (Doc. 61, 69) Defendant's argument that some conflict may arise between Storm's recollection of these meetings and the women's recollections is entirely speculative. It is also belied by the contents of those affidavits, which appear to support Storm's testimony as to what the women told her in 2004.

Plaintiff's counsel's testimony is thus not necessary. Under the test set forth in *Zurich*, therefore, the drastic measure of disqualification is not warranted. *See, e.g., Adams v. Lexington-Fayette Urban County Gov't*, No. 2007-CA-000066-MR, 2009 WL 350600, at *13-*14 (Ky. App. Feb. 13, 2009) (holding that

trial court properly refused to disqualify defendant's attorney who performed pre-litigation investigation of complaint of discrimination by plaintiff).

Finally, even if defendant could show that the *Zurich* test was satisfied, recent authority indicates that the version of the ethical Rule applicable here typically does not extend disqualification to pretrial proceedings. *See Williams v. Borden Chem., Inc.*, 501 F. Supp.2d 1219, 1221-23 (S.D. Iowa 2007) (citing other authorities so holding).

In sum, the renewed motion to disqualify must be denied because discovery has revealed no new basis for disqualification. Moreover, as the underlying coverage issue is now the subject of cross motions for summary judgment, the question of who may testify at trial will likely never arise.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that defendant's renewed motion to disqualify plaintiff's counsel (Doc. 44) be, and is hereby, **DENIED.**

This 3rd day of November, 2010.



**Signed By:**
**William O. Bertelsman** W.OB
**United States District Judge**